**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
BY:  Drake P. Bearden, Jr., Esquire
Attorney I.D. 308035
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Telephone:  (856) 596-4100
Facsimile:  (856) 702-6640
Email: dbearden@lawjw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELENA SPENCER,<br><br>*Plaintiff,*<br><br>v.<br><br>PARSIPPANY-TROY HILLS TOWNSHIP SCHOOL DISTRICT<br><br>*Defendant(s).* | CIVIL ACTION NO.<br><br><br><br><br><br>**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL** |

Plaintiff, Celena Spencer, residing in the State of New Jersey, by way of Complaint against the Defendant(s), says:

## PRELIMINARY STATEMENT

1. Plaintiff alleges that her employer, Parsippany-Troy Hills Township School District, discriminated against her because of her race and retaliated against her for engaging in protected conduct all in violation of the New Jersey Law Against Discrimination ("LAD") and 42 U.S.C. § 1983 through 42 U.S.C. § 1981 (hereinafter "§ 1983").

## JURISDICTION

2. This action is brought pursuant to § 1983 and the LAD.  Jurisdiction is founded on 28 U.S.C. §§1367 and the aforementioned statutory provisions.

3. Jurisdiction lies under state laws claims based on the principles of supplemental jurisdiction as codified at 28 U.S.C. §1367(a).

4. Supplemental jurisdiction over Plaintiff's state law claim is proper because Plaintiff's claims of discrimination and retaliation under the NJLAD are related to Plaintiff's federal claim as they are part of the same case or controversy under Article III of the United States Constitution and because no novel or complex issue of state law predominates. *See* 28 U.S.C. § 1367.

5. The amount in controversy exclusive of interests and costs exceeds the minimum required amount of $75,000.

## VENUE

6. All claims herein arose within the jurisdiction of the United States District Court for the State of New Jersey and involved a Defendant who resides within the jurisdictional limits. Venue is accordingly invoked according to the dictates of 28 U.S.C. §1391(b) and (c).

## PARTIES

7. Plaintiff Celena Spencer was, at all times relevant herein, a resident of the State of New Jersey and a former employee of Defendant.

8. Defendant was, at all times relevant herein, a public school district operating in the State of New Jersey with its office at 577 Vale Road, Parsippany, NJ 07054.

## FACTS

9. Plaintiff, who is a Black woman, began working at Defendant in the 2021-2022 school year.

10. Defendant notified Plaintiff it was not going to renew her for the following school year on or around May 6, 2022.

11. Plaintiff was hired to work in the position of Assistant Principal at Parsippany High School.

12. Plaintiff's supervisor was the Principal of the High School, Keith Bush.

13. The other assistant principals were Nicholas DeBlasio, and Michael DiBernard.

14. Bush, DeBlasio and DiBernard are all White men.

15. The Superintendent of Schools was Barbara Sargent and the Assistant Superintendent was Denis Mulroony.

16. Both Sargent and Mulroony are also White.

17. Initially, Plaintiff's supervisors, Bush and Sargent were very complimentary of Plaintiff's job performance.

18. They told Plaintiff she was great at her job and Bush even stated at one point Plaintiff was so good she would be running the School one day.

19. That changed in or around the Spring of 2022, after a series of events involving racial issues Plaintiff brought to the attention of Defendant.

20. When Plaintiff began working for Defendant, the School created a Diversity Equity Inclusion and Access ("DEIA") Committee at Defendant.

21. Bush asked Plaintiff to work on that Committee.

22. The DEIA Committee was so popular that Plaintiff had to schedule two meetings per month.

23. There were 70 individuals at Defendant who wanted to participate in the Committee.

24. Plaintiff split the Committee between the fall and the spring so that there were two groups.

3

25. In or around December of 2021 a teacher contacted Plaintiff and stated that he was offended by Native American[1] iconography that existed within the school.

26. There is Native American iconography throughout the High School, which included a large image of the head of a Native American individual.

27. The individual who contacted Plaintiff thought that image was discriminatory.

28. Plaintiff reported the complaint about discrimination to Bush.

29. Plaintiff said that she would follow Bush's lead on how to deal with the Native American iconography at the School.

30. Initially, Bush told Plaintiff that she needed to take steps to start removing Native American iconography from the School.

31. In particular, Bush told Plaintiff to remove a Native American iconography display.

32. However, the teacher who created that display became upset and said he was not going to take the display down.

33. Plaintiff's understanding is the teacher then spoke with Bush, and then in or around January 2022, Bush told Plaintiff not to take the display down.

34. After the teacher complained, in or around January 2022, other individuals started a Facebook post objecting to removing Native American iconography from the School.

35. One of the posts specifically stated, "This is what happens when people who didn't grow up here and go through our system get to a place of power."

36. Plaintiff believes this was a direct reference to Plaintiff and an insinuation she was an outsider responsible for the removal of the Native American iconography.

---

[1] Native American refers to the individuals indigenous to the United States.

37. Around the same period of time, Black students at Defendant complained to Plaintiff about discrimination at Defendant.

38. In particular, Black students told Plaintiff that White students were using the "n" word in the School.

39. The Black students said they complained about the discriminatory conduct, and nothing was done to stop the conduct.

40. Plaintiff reported the Black students' complaints to Bush in or around February of 2022.

41. Plaintiff also spoke to Bush about the students creating a Black Student Union ("BSU") to address some of the Black student's concerns.

42. Bush told Plaintiff he would write a letter on behalf of the BSU, but Black students told Plaintiff they did not feel comfortable with Bush sending out an email regarding the issues.

43. In or around April of 2022, a meeting was held with Black students at the School, and they said they did not feel heard, but were glad that they had a Black Principal in Plaintiff.

44. In either March or April, 2022, there was an incident that involved a Black special education student (hereinafter referred to as "J") and Bush.

45. During the incident Bush confronted J and got into J's face, while Plaintiff was present.

46. At that time, Plaintiff called the school resource officer to report the incident.

47. J asked Plaintiff if she was going to help him, and Bush responded "no" and that he was the principal.

48. After the incidents outlined above in January, February, March and April 2022,

Bush's attitude and conduct toward Plaintiff changed dramatically.

49. Bush was no longer as complimentary regarding Plaintiff's performance and Bush rarely, if ever, communicated with Plaintiff.

50. Plaintiff was then notified at a meeting on May 6, 2022, that her contract was not going to be renewed for the following year.

51. During the meeting, Bush, Mulroony and a union representative were present.

52. Bush read from a notepad the reasons why Defendant was not renewing Plaintiff's contract.

53. While Bush read from the notepad, the union representative stated on multiple occasions, "this is ridiculous."

54. Bush stated Plaintiff's contract was not renewed because Plaintiff allegedly did not keep in contact with the English second language supervisor, and she allegedly mishandled a situation that occurred in September of 2021 involving a student video.

55. Bush told Plaintiff that she did not communicate with the English second language supervisor, Vicky Santana.

56. As the Assistant Principal, Plaintiff was responsible for Grades 9 through 11, and English second language students.

57. After Bush told Plaintiff one reason for not renewing Plaintiff was her failure to communicate with Santana, Plaintiff spoke to Santana.

58. Santana told Plaintiff that she never told anyone Plaintiff did not communicate with her.

59. The video incident involved a student allegedly making an inappropriate video.

60. Defendant conducted an investigation into the incident, which involved Plaintiff,

Bush and DiBlasio.

61. Defendant took the phones away from the students and gave them to the resource officer and called each of the student's parents.

62. At the time, no one told Plaintiff she did anything incorrect regarding the video and Plaintiff was never reprimanded for her conduct regarding the video.

63. However, on the May 6, 2022 meeting, Bush told Plaintiff that she did not handle the video situation correctly.

64. Plaintiff was never advised what she did incorrectly with that situation.

65. As the Assistant Principal, Plaintiff was also supposed to receive three observations in the school year.

66. Plaintiff asked Bush about her observations, but she did not receive an observation until after she was told she was not going to be renewed.

67. For the 2022-23 school year the assistant principals were Bush, Mina Kelaid and DiBernard, none of whom are Black.

68. Therefore, Plaintiff's position was filled by someone who is not in the same protected categories as Plaintiff.

## LEGAL AVERMENTS

69. Plaintiff is a member of a protected class under the LAD and § 1981 as a Black woman and an individual who engaged in protected conduct.

70. Plaintiff engaged in protected conduct that included but was not limited to: reporting a teacher's complaint about discriminatory Native American iconography in the building; reporting Black students' complaints about racial slurs made by White students; reporting Bush's confrontation with a Black special needs student; and supporting Black

7

students' efforts to form the BSU to address racial issues at Defendant.

71. Subsequent to Plaintiff engaging in this protected conduct, Plaintiff was subjected to adverse employment actions that included, but were not limited to, Defendant not renewing Plaintiff's contract.

72. Plaintiff's position was filled by an individual who was not a member of the protected categories outlined in Plaintiff's Complaint.

73. Defendant's proffered reasons for Plaintiff's non-renewal were pretext for discrimination and retaliation.

74. A determinative or motivating factor in the adverse employment actions Defendant took against Plaintiff was Plaintiff's membership in the protected categories as outlined in this Complaint.

75. Because the discrimination and retaliation were knowing, intentional and purposeful, punitive damages are warranted because the conduct was either undertaken by members of upper management, or members of upper management were willfully indifferent to the conduct.

76. Defendant is liable under § 1983 because it had a policy and/or custom of allowing employees to discriminate against Black employees and retaliate against employees for complaining about discrimination.

77. Defendant is further liable under § 1983 because Defendant failed to train and/or supervise its employees regarding race discrimination and retaliation.

78. As a result of the unlawful conduct outlined above, Plaintiff has been forced to suffer economic and non-economic harm.

## COUNT I
## DISCRIMINATION BASED ON RACE UNDER LAD

79. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

80. Plaintiff was subjected to discrimination based on race that had an adverse effect on her employment as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems appropriate and just under the circumstances.

## COUNT II
## RETALIATION UNDER THE LAD

81. Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth at length herein.

82. Plaintiff engaged in protected activity under the LAD as articulated at length in this Complaint.

83. Subsequent to Plaintiff engaging in the protected activity outlined above, Defendant subjected her to adverse employment actions as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems appropriate and just under the circumstances.

## COUNT III
### LIABILITY FOR RACE DISCRIMINATION BASED ON FAILURE TO TRAIN AND/OR SUPERVISE AND POLICY AND CUSTOM § 1983

84. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

85. Plaintiff was subjected to discrimination based on race that had an adverse effect on her employment.

86. Defendant is liable for the discrimination pursuant to § 1983 for the reasons articulated in Plaintiff's Complaint.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT IV
### LIABILITY FOR RETALIATION BASED ON FAILURE TO TRAIN AND/OR SUPERVISE AND POLICY AND CUSTOM § 1983

87. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

88. Plaintiff was subjected to retaliation because she engaged in protected conduct under § 1981.

89. Defendant is liable for the retaliation pursuant to § 1983 for the reasons articulated in Plaintiff's Complaint.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and

suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

90. Plaintiff requests the following equitable remedies and relief in this matter:

   a. Plaintiff requests a declaration by this Court that the practices contested herein violate the LAD and § 1983.

   b. Plaintiff requests that the Court order Defendant to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and to all other individuals similarly situated.

   c. Plaintiff requests that in the event equitable reinstatement or equitable back pay and front pay is ordered to the Plaintiff, that all lost wages, benefits, fringe benefits and other renumeration is also equitably restored to Plaintiff.

   d. Plaintiff requests that the Court order Defendant to alter its files so as to expunge any reference to which the Court finds violates the statutes set forth herein.

   e. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

                            **JAVERBAUM WURGAFT HICKS**
                            **KAHN WIKSTROM & SININS, P.C.**


                            By: /s/ Drake P. Bearden, Jr.
                                Drake P. Bearden, Jr.
                                *Attorneys for Plaintiff*

Dated: October 31, 2023

## DEMAND TO PRESERVE EVIDENCE

1.  All defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to plaintiff's employment, to plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

2.  Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

>                    **JAVERBAUM WURGAFT HICKS KAHN**
>                    **WIKSTROM & SININS, P.C.**
>
>
>              By:   /s/ Drake P. Bearden, Jr.
>                    Drake P. Bearden, Jr., Esquire
>                    *Attorneys for Plaintiff*
>                                         .

Dated: October 31, 2023